UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

KEVIN L. MARTIN,

    Plaintiff,

    v.   CAUSE NO. 3:20-CV-00082-JD

JOHN GALIPEAU, et al.,

    Defendants.

OPINION AND ORDER

Kevin L. Martin, a prisoner without a lawyer, is proceeding in this case on four claims. ECF 11. First, he is proceeding "against Officer Hart for violating his rights under the Free Exercise Clause of the First Amendment by confiscating his religious materials following the July 2019 transfer and refusing to return them[.]" *Id.* at 4-5. Second, he is proceeding "against Warden Galipeau, Captain Lewis, Sergeant Spates, and Officer David for violating his rights under the Free Exercise Clause of the First Amendment by confiscating his religious materials in December 2019[.]" *Id.* at 5. Third, he is proceeding "against Warden Galipeau for violating his rights under the First Amendment by confiscating his property in retaliation for lawsuits and grievances directed at Warden Galipeau[.]" *Id.* Lastly, he is proceeding on an injunctive relief claim against Warden Galipeau "to prevent the confiscation of religious materials to the extent required by the Religious Land Use and Institutionalized Persons Act[.]" *Id.* The defendants filed a joint motion for summary judgment. ECF 100. Martin filed a response

and the defendants filed a reply. ECF 108, 114. Martin then filed an unauthorized sur-reply.[1] The summary judgment motion is now fully briefed and ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

## I.   FACTS

Martin, an inmate formerly incarcerated at the Westville Correctional Facility ("WCF"), identifies as a Hebrew Israelite. ECF 100-1 at 17, 31. While at WCF, Martin was sent religious materials on a daily basis from various sources, including The House of Yahweh in Texas. *Id.* at 17-18. The religious materials are similar to magazines and

---

[1] Northern District of Indiana Local Rule 56-1 provides an opportunity for only a single response and prohibits the filing of additional briefs without leave of court. N.D. Ind. L. R. 56-1(d). Nevertheless, the court has reviewed the contents of Martin's sur-reply, and concludes the arguments raised in the sur-reply have no impact on the disposition of this case.

lay out scriptures, refer him to passages of the Torah, and advise him on what to do each day and how to pray before each meal. *Id.* at 18-19.

Martin was first transferred to WCF in July 2019, at which time he was placed in the restrictive housing unit. ECF 100-1 at 16, 28, 69. Upon Martin's arrival at WCF, his property was inventoried by WCF's property officer, Officer Hart. *Id.* at 19-20. At that time, Martin had around twenty boxes of religious and legal materials. *Id.* at 20. Officer Hart told Martin that WCF's policy allowed him to keep only two boxes of personal property in his cell. *Id.* at 22, 89-90. Nevertheless, Officer Hart allowed Martin to keep seven or eight boxes with him, which contained his Torah and various religious magazines and books. *Id.* at 22, 27-29, 41. The remainder of his boxes were stored by the prison. *Id.* at 26.

On December 19, 2019, correctional officers came to Martin's cell and moved all but two of his boxes out of his cell and into storage. ECF 100-1 at 46. Martin had "accumulated a lot" of legal materials during his time at WCF. *Id.* The officers informed Martin they had been instructed to remove the excess legal materials from his cell. *Id.* at 90-91. Captain Lewis told Martin that anything Martin could not fit within two boxes was going into storage. *Id.* at 35, 49. Martin, however, was not allowed to choose which two boxes remained, nor was he given time to select what items would go in those boxes. *Id.* at 83. As a result, all of his religious materials ended up in storage. *Id.* at 83-84. The officers also removed excess property from the cell of another inmate who they believed had excessive legal materials, and later returned to remove excess property from additional cells in the unit. *Id.* at 88. Martin believed the defendants moved his

3

property to storage in retaliation for his filing lawsuits and complaints against the prison. *Id.* at 38-39, 49-50. According to Martin, he asked the warden why they had removed his property and the warden responded, "stop filing lawsuits and complaints." *Id.* at 50.

After the defendants removed Martin's property on December 19, Martin retained two boxes of legal material but had no religious materials left in his cell. ECF 100-1 at 49. Martin, however, continued to receive additional religious materials from the House of Yahweh and was allowed to access the Torah on a tablet. *Id.* at 50-51. However, Martin did not realize he could access the Torah on the tablet until several months later, in March 2020. *Id.* at 65-66. Moreover, Martin claims that it would have been difficult access the Torah on the tablet because the reception at WCF was "hard to pick up." *Id.* at 65.

The Indiana Department of Correction has a policy in place regarding offenders' personal property, which provides that each facility shall limit possession of personal property based upon "health, fire, and safety issues and the promotion and maintenance of good order and administrative manageability." ECF 100-2 at 1. WCF has a policy specific to the restrictive housing unit, which allows the warden to limit the amount of personal property allowed in the restrictive housing unit "based upon the security and/or safety of the facility, restrictive status housing unit, staff, and offenders." ECF 100-3 at 14. The policy also provides that WCF chaplains make weekly visits to the restrictive housing unit to review the religious needs of offenders and allows offenders to request additional visits from a chaplain or an approved accredited

4

representative of their preference.² *Id.* at 20. Lastly, the policy provides that inmates in the restrictive housing unit have access to reading materials and library services. *Id.* at 19. Because neither party disputes these facts, the court accepts them as undisputed.

## II. ANALYSIS

### i. *Free Exercise Clause claim against Officer Hart*

Martin is proceeding against Officer Hart "for violating his rights under the Free Exercise Clause of the First Amendment by confiscating his religious materials following the July 2019 transfer and refusing to return them[.]" ECF 11 at 4-5. Prisoners have a right to exercise their religion under the free-exercise clause of the First Amendment. *Vinning-El v. Evans*, 657 F.3d 591, 592-93 (7th Cir. 2011). However, for a prisoner to prevail, it is not enough to simply show that a prison practice substantially burdens an exercise of religion. *See Johnson-Bey v. Lane*, 863 F.2d 1308, 1310 (7th Cir. 1988) ("[P]rison inmates retain a number of constitutional rights, including the right to the free exercise of their religion—but in distinctly truncated form: the prison is entitled to curtail these rights to the extent necessary to protect security."). Correctional officials may restrict the exercise of religion if the restrictions are reasonably related to legitimate penological objectives, such as the safety and security of the prison facility. *Turner v. Safley*, 482 U.S. 78, 89-91 (1987). The Court considers (1) whether the restriction is rationally connected to a legitimate government objective; (2) whether there is an "alternative means of exercising" the restricted religious right; (3) what impact the

---

² Martin denies that the chaplain had Hebrew Israelite religious material. ECF 108 at 54. But he does not support that statement with relevant evidence or otherwise explain how he knows that. Thus, the relevance of this unsupported statement will not be considered here.

5

restriction would have on other inmates as well as prison staff and facility resources; and (4) the existence of other options that would suggest the prison is exaggerating its concerns. *Id.* at 89-91.

In his deposition, Martin testified Officer Hart violated his First Amendment rights by placing some of his religious materials in storage when he first arrived at WCF and allowing him to keep only eight of his twenty boxes of personal possessions in his cell. ECF 100-1 at 43-45. Here, the first *Turner* factor favors Officer Hart, as Officer Hart's decision to place some of Martin's property in storage was reasonably related to the prison's legitimate penological objectives of maintaining the safety, security, good order, and administrative manageability of the prison. Specifically, it is necessary for prison officials to restrict the amount of personal property an inmate may keep in his cell in order to reduce fire hazards and effectively manage the prison environment. The second *Turner* factor also favors Officer Hart, as Martin was allowed to keep eight boxes of personal property in his cell, continued to receive religious materials from the House of Yahweh, and was able to practice his religion by talking with his Hebrew brothers on the phone and requesting visits from a chaplain or an approved accredited representative of his preference. *See* ECF 100-1 at 69 (testifying he was able to speak on the phone with his Hebrew brothers two or three times per month); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 351-52 (1987) (holding the inquiry under the second *Turner* factor is whether the inmates "were deprived of 'all means of expression'"). Neither party presents any evidence related to the third and fourth *Turner* factors.

Accordingly, because the *Turner* factors strongly favor Officer Hart, no reasonable jury could conclude he violated Martin's rights under the Free Exercise Clause by placing some of his religious materials in storage in July 2019. Summary judgment is warranted in Officer Hart's favor.

> ii.  *Free Exercise Clause claim against Warden Galipeau, Captain Lewis, Sgt. Spates, and Officer David*

Martin is proceeding against Warden Galipeau, Captain Lewis, Sgt. Spates, and Officer David "for violating his rights under the Free Exercise Clause of the First Amendment by confiscating his religious materials in December 2019[.]" ECF 11 at 5. Martin argues the defendants violated his First Amendment rights by moving all but two of his boxes of personal possessions out of his cell and into storage, which left him with no religious materials in his cell.

Here, the first *Turner* factor favors the defendants because the prison's policy of limiting the amount of personal property an inmate may keep in his cell is reasonably related to its objective of maintaining the safety, security, good order, and administrative manageability of the prison, as discussed above. Although Martin argues the defendants effectively removed all of his religious materials out of his cell, it is undisputed the defendants allowed him to keep two boxes of personal possessions in his cell. Moreover, there is no evidence the defendants specifically targeted Martin's religious materials for removal, as they informed Martin they had been instructed to remove his "excess legal materials" and that they were going to confiscate anything he could not fit into two boxes. The Free Exercise Clause does not entitle Martin to keep

7

more than two boxes of personal possessions in his cell. The second *Turner* factor also favors the defendants, as it is undisputed Martin continued to receive religious materials from the House of Yahweh and was able to continue practicing his religion by talking with his Hebrew brothers on the phone, accessing the Torah on a tablet,[3] and requesting visits from a chaplain or an approved accredited representative of his preference. Neither party presents any evidence regarding the third and fourth *Turner* factors.

Accordingly, because the *Turner* factors favor the defendants, no reasonable jury could conclude they violated Martin's rights under the Free Exercise Clause by moving his religious materials into storage in December 2019 and allowing him to keep only two boxes of personal possessions in his cell. Summary judgment is warranted in favor of the defendants on this claim.

    iii.    *First Amendment retaliation claim against Warden Galipeau*

Martin is proceeding "against Warden Galipeau for violating his rights under the First Amendment by confiscating his property in retaliation for lawsuits and grievances directed at Warden Galipeau[.]" ECF 11 at 5. To prevail on a First Amendment retaliation claim, Martin must show "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating

---

[3] Although Martin testified he did not realize he could access the Torah on the tablet until March 2020 when he was transferred to another prison, he does not dispute that WCF allowed inmates to access the Torah on the tablet at all relevant times. His untested speculation that the poor reception would have prevented him from accessing the Torah is not enough to create a genuine dispute over whether the Torah was available to him.

8

factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

Here, regarding the first prong, it is undisputed Martin engaged in activity protected by the First Amendment by filing lawsuits and grievances. *See DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000) ("a prison official may not retaliate against a prisoner because that prisoner filed a grievance"). Regarding the second prong, the defendants argue Martin did not suffer a deprivation that would likely deter First Amendment activity because he was not prevented from practicing his religion. ECF 101 at 7-8. However, a reasonable jury could conclude that enforcing a policy against Martin that was previously unenforced, and that resulted in the confiscation of the majority of his personal possessions, is a sufficient deprivation likely to deter First Amendment activity in the future. *See Surita v. Hyde*, 665 F.3d 860, 878-79 (7th Cir. 2011) (suggesting that enforcement of a previously unenforced ordinance could be a sufficient deprivation to deter First Amendment activity); *see also Douglas v. Reeves*, 964 F.3d 643, 647 (7th Cir. 2020) ("[w]hether retaliatory conduct is sufficiently severe to deter is generally a question of fact" for the jury). Regarding the third prong, the defendants argue they were not motivated by retaliatory animus in removing Martin's excess boxes into storage, as they were merely enforcing WCF's policy that only allowed him to have two boxes of personal possessions in his cell. ECF 101 at 8-9. However, a reasonable jury could conclude Martin's First Amendment activity was "at least a motivating factor" in Warden Galipeau's decision to remove Martin's property into storage, as Martin testified that Warden Galipeau told him he removed his property so he would "stop

9

filing lawsuits and complaints." Thus, Martin has provided evidence by which a reasonable jury could conclude Warden Galipeau violated his First Amendment rights by confiscating his property in retaliation for filing lawsuits and grievances. Summary judgment must be denied on this claim.

    *iv.    RLUIPA claim against Warden Galipeau*

Martin is proceeding against Warden Galipeau for injunctive relief "to prevent the confiscation of religious materials to the extent required by the Religious Land Use and Institutionalized Persons Act[.]" ECF 11 at 5. The defendants do not clearly articulate any basis for summary judgment on this claim in their summary judgment motion. However, the docket reflects that Martin is no longer housed at WCF, and is now incarcerated at the Pendleton Correctional Facility. ECF 26, 92. In light of this transfer, it appears that his injunctive relief claim against Warden Galipeau is moot. S*ee Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) ("If a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless he can demonstrate that he is likely to be retransferred."). Pursuant to Fed. R. Civ. P. 56(f), the court may, after giving notice and a reasonable time to respond, grant a motion for summary judgment on grounds not raised by a party. Therefore, Martin is granted leave to file a response explaining why his transfer does not moot his injunctive relief claim against Warden Galipeau.

For these reasons, the court:

(1) GRANTS the defendants' motion for summary judgment (ECF 100) as to Martin's First Amendment Free Exercise Clause claims but DENIES it as to Martin's First Amendment retaliation claim;

(2) GRANTS Martin until November 23, 2022, to file a response showing cause why the injunctive-relief claim against Warden Galipeau should not be dismissed as moot;

(3) CAUTIONS Martin that failure to respond by the deadline will result in his injunctive-relief claim being dismissed without further notice; and

(4) GRANTS Warden Galipeau fourteen days after Martin files a response to file a reply.

SO ORDERED on November 2, 2022

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT